Rodney J. SCHONBERGER, Appellee,

v.

Carroll John ROBERTS and Buck
Hummer Trucking, Inc.,
Appellants.

No. 89–800.

Supreme Court of Iowa.

May 23, 1990.

Rehearing Denied June 20, 1990.

Frank J. Comito of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellants.

Russell S. Wunschel and Dee Ann Wunschel of Wunschel & Eich, Carroll, and Barry T. Bruner of Bruner & Bruner, Carroll, for appellee.

HARRIS, Justice.

When the legislature, in two separate statutes, prohibits the application of a rule of common law we are clearly obliged to yield to the mandate. The question here is whether we should give the mandate double effect. This appeal calls for interpretation of an Iowa statute which is in part designed to deal with a situation already controlled by another statute. A literal interpretation of the latter statute, in view of the prior one, would call for doubling an intended reduction in tort recoveries. We believe the goal of the two statutes should be fully realized, but only once. We affirm the trial court.

On July 22, 1987, the plaintiff, Rodney Schonberger, was driving west on U.S. Highway 30 in Carroll, Iowa. He had picked up his employer's mail and was headed to work when an accident occurred. Schonberger was preparing to turn into his employer's parking lot when he was struck by the defendant, Carroll John Roberts, who was driving a truck owned by defendant Buck Hummer Trucking, Inc.

As a result of the accident Schonberger was unable to return to work for three and one-half weeks. He suffered injuries to his neck, back, and knee. His medical bills totaled $7625.40 at the time of trial. These expenses, as well as future medical expenses, are being reimbursed as a part of the workers' compensation benefits Schonberger is receiving. Schonberger's injuries were permanent, and he will continue to incur medical expenses as a result of the accident.

Schonberger then brought this tort suit for his injuries which resulted in a jury verdict in his favor. The jury assessed eighty percent of the negligence to Roberts and twenty percent to Schonberger. It determined past damages were $18,000 and that future damages were $115,000. The jury also found that Schonberger was not wearing a seat belt and determined the award should be reduced an additional two percent.

■ Although defendants assert the damage awards were excessive—a matter we later address—the preeminent issue in the case is defendants' challenge to a trial court ruling refusing to admit evidence. Defendants sought to introduce evidence regarding the payment of medical bills and other workers' compensation benefits to Schonberger. The trial court ruled the evidence inadmissible. This ruling is defendants' first assignment of error on appeal.

Since 1913 an Iowa statute, now Iowa Code section 85.22 (1989), has provided a right of indemnity to workers' compensation employers (or their insurers) for amounts paid under the Act from recoveries realized by the worker in tort actions for the same injuries. Without doubt Schonberger's workers' compensation insurer is entitled to be compensated from his recovery in this suit for any amounts paid to or for him on account of this injury. *See e.g. Liberty Mut. Ins. Co. v. Winter,* 385 N.W.2d 529, 531–32 (Iowa 1986).

■ In 1987 the General Assembly amended the comparative fault Act, to include a special provision, Iowa Code § 668.14,[1] also aimed at prohibiting an injured worker to recover twice for the same industrial injury. Both section 85.22 (in a limited situation) and section 668.14 (in a broader sense) are limitations on the collateral source rule, a principle long recognized as a part of our common law. Under the collateral source rule a tortfeasor's obligation to make restitution for an injury he or she caused is undiminished by any compensation received by the injured party from a collateral source. *Clark v. Berry Seed Co.,* 225 Iowa 262, 271, 280 N.W. 505, 510 (1938).

The trial court's rejection of the proffered evidence was in reaction to the obvious inconsistency between compelling the injured worker to pay back his benefits from his recovery and at the same time have the jury reduce his recovery because of them. To remedy this inconsistency the trial court rested its exclusion of evidence of workers' compensation benefits on Iowa rule of evidence 402 (all irrelevant evidence is inadmissible). Schonberger argues in support of the ruling in part by contending that the workers' compensation Act is, because of its design and regulated status, a state program. State programs are expressly exempted from the sweep of section 668.14.

I. There are well-recognized limits to the extent to which courts will slavishly ascribe literal meanings to the words of a statute. Because legislative intent is the polestar of statutory interpretation

it is clear that if the literal import of the text of an act is inconsistent with the

---

1. Section 668.14 provides:

**668.14 Evidence of previous payment or future right of payment.**

1. In an action brought pursuant to this chapter seeking damages for personal injury, the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care, rehabilitation services, and custodial care except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.

2. If evidence and argument regarding previous payments or future rights of payment is permitted pursuant to subsection 1, the court shall also permit evidence and argument as to the costs to the claimant of procuring the previous payments or future rights of payment and as to any existing rights of indemnification or subrogation relating to the previous payments or future rights of payment.

3. If evidence or argument is permitted pursuant to subsection 1 or 2, the court shall, unless otherwise agreed to by all parties, instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating the effect of such evidence or argument on the verdict.

4. This section does not apply to actions governed by section 147.136. [Medical malpractice cases.]

legislative meaning or intent, or if such interpretation leads to absurd results, the words of the statute will be modified to agree with the intention of the legislature.

2A Sutherland, *Statutory Construction* § 46.07 (Sands 4th Ed.1984) (citing *Graham v. Worthington,* 259 Iowa 845, 854, 146 N.W.2d 626, 633 (1966)).

In construing various statutes we have often applied this rule by refusing to attribute to the General Assembly an intention to produce an absurd result. *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989); *Metier v. Cooper Transp. Co.,* 378 N.W.2d 907, 913 (Iowa 1985); *Baldwin v. City of Waterloo,* 372 N.W.2d 486, 493 (Iowa 1985); *DeMore v. Dieters,* 334 N.W.2d 734, 737 (Iowa 1983); *Welp v. Iowa Dep't of Revenue,* 333 N.W.2d 481, 483 (Iowa 1983); *Hanover Ins. Co. v. Alamo Motel,* 264 N.W.2d 774, 778 (Iowa 1978); *Egy v. Winterset Motor Co.,* 231 Iowa 680, 686–87, 2 N.W.2d 93, 97 (1942); *Trainer v. Kossuth County,* 199 Iowa 55, 59, 201 N.W. 66, 67 (1924).

In the last cited case we were faced with a statute which, literally interpreted, would lead to an absurd result. We said:

> Such absurdity of result calls for scrutiny of the statute. *Ad absurdum* is a "Stop" sign, in the judicial interpretation of statutes. It is indicative of fallacy somewhere, either in the point of view or in the line of approach. In such case, it becomes the duty of the court to seek a different construction, and to presume always that absurdity was not the legislative intent. To this end, it will limit the application of literal terms of the statute, and, if necessary, will even engraft an exception thereon.

*Trainer,* 199 Iowa at 59, 201 N.W. at 67 (citations omitted).

A literal application of section 668.14 under the present circumstances would also lead to an absurd result. Under section 85.22 Schonberger must repay from his recovery his workers' compensation insurer any benefits he has received. The only conceivable purpose of informing the jury of those benefits is to invite the jury to reduce his recovery because of them. But, to any extent the jury does reduce the damage award because of the benefits, Schonberger is in effect paying, not once, but twice. We are convinced the legislature did not intend to call for this double reduction.

To avoid this unintended result we interpret the statute so as to deem its requirements satisfied when the requirements of section 85.22 are complied with. The case is remanded to district court for a proceeding in which it must be established that the proceeds of any recovery received by Schonberger are pledged to reimburse his workers' compensation insurer in accordance with Iowa Code section 85.22. Upon such a showing the judgment of the trial court shall stand as affirmed.

■ II. Defendants also complain of the amount of the award which, by present standards, does appear to be generous for the injuries sustained. The amount is not however so flagrantly excessive as to compel our interference. *See Sallis v. Lamansky,* 420 N.W.2d 795, 799 (Iowa 1988).

AFFIRMED AND REMANDED.

All Justices concur except McGIVERIN, C.J., and NEUMAN, and ANDREASEN, JJ., who dissent.

McGIVERIN, Chief Justice (dissenting).

I respectfully dissent.

The majority opinion substantially sets aside the clear terms of Iowa Code section 668.14 and, as a practical matter, fully reinstates the judicially created collateral source rule by use of Iowa Rule of Evidence 402, at least in cases where collateral benefits are paid subject to a statutory right of subrogation.

Unlike the majority, I believe that the terms of section 668.14 can be respected without visiting inequity on Schonberger and others in his position.

I. Iowa Code section 668.14, enacted in 1987, is the product of a broad-ranging study conducted by the Iowa Liability and Liability Insurance Study Commission, an entity created by the legislature to study

liability and liability insurance issues and report on those issues to the legislature. *Final Report of the Iowa Liability and Liability Insurance Study Commission* 8 (1986) [hereinafter *Liability Report* ]. The commission's voting membership consisted of eight legislators and four members of the public. *Id.* Its final report included both a majority and minority recommendation on whether to retain, modify or abolish the judicially created collateral source rule in Iowa law. *Id.* at 133–34, 162–63.

Under the collateral source rule, damages awarded to a successful tort plaintiff against a tort defendant are not reduced by any sums which the plaintiff has received, or will receive, from another source (a "collateral source") on account of the plaintiff's injury. *See Groesbeck v. Napier*, 275 N.W.2d 388, 391–92 (Iowa 1979); 22 Am. Jur.2d *Damages* § 566 (1988). Typically these sources are insurance benefits of one form or another, such as the workers' compensation benefits in this case. As a common law rule of evidence, the collateral source rule bars evidence of such "collateral benefits." *See, e.g., Stewart v. Madison*, 278 N.W.2d 284, 293–94 (Iowa 1979). As a common law rule of damages, the rule provides that a damages award against a tort defendant will not be reduced by reason of such collateral benefits. *See, e.g., Rigby v. Eastman*, 217 N.W.2d 604, 609 (Iowa 1974).

One effect of the common law collateral source rule is that in cases where the plaintiff receives collateral benefits which are not paid subject to a right of subrogation in the payor, and also is compensated for the same injuries from a tort suit against the defendant, the plaintiff receives duplicate damages to the extent that the collateral benefits and tort recovery overlap. 22 Am. Jur.2d *Damages* § 566 (1988). This is commonly known as "double dipping" and is thought by tort defendants to unfairly overcompensate the plaintiff. Carlson, *Fairness in Litigation or "Equity for All," * 36 Drake L.Rev. 713, 719 (1986–1987). The counterargument is that to allow collateral benefits to reduce the tort recovery would relieve the defendant of the consequences of tortious conduct. *Clark v. Berry Seed*

*Co.*, 225 Iowa 262, 271, 280 N.W. 505, 510 (1938). As between the plaintiff and the tortfeasor, the common law deems it more just that the plaintiff profit from collateral benefits. *See id.;* 22 Am.Jur.2d *Damages* § 566 (1988).

On the other hand, in cases where collateral benefits are paid subject to a right of subrogation, the plaintiff is not double dipping because the subrogee will recover the collateral benefits out of the plaintiff's tort recovery from the defendant. Schonberger's case is a prime example of this situation because under Iowa Code section 85.-22, the workers' compensation benefits he received will have to be repaid out of his tort recovery.

The majority of the study commission recommended that the legislature enact a statute which would allow the factfinder in a tort suit to hear evidence and argument on certain collateral benefits in cases where the plaintiff's losses were "replaced" or "indemnified" by a collateral source. *Liability Report* at 134. In those cases the factfinder would be allowed but not required to reduce the plaintiff's tort recovery by the amount of collateral benefits, presumably avoiding a double dipping situation whenever the factfinder took the collateral benefits into account. *See id.; cf.* Iowa Code § 147.136 ("damages awarded [in a medical malpractice action] shall not include actual economic losses ... to the extent that those losses are replaced or are indemnified [by certain collateral sources].")

II. The legislature apparently approved of this recommendation and enacted a statute—Iowa Code section 668.14—very similar to that recommended by the majority of the study commission. Iowa Code section 668.14 provides:

1. In an action brought pursuant to this chapter seeking damages for personal injury, *the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred* as a result of the personal injury for necessary medical care, reha-

bilitation services, and custodial care except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.

2. If the evidence and argument regarding previous payments or future rights of payment is permitted pursuant to subsection 1, the court shall also permit evidence and argument as to the costs to the claimant of procuring the previous payments or future rights of payment and as to any existing rights of indemnification or subrogation relating to the previous payments or future rights of payment.

3. If evidence or argument is permitted pursuant to subsection 1 or 2, the court shall, unless otherwise agreed to by all parties, instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating the effect of such evidence or argument on the verdict.

4. This section does not apply to actions governed by section 147.136.

(Emphasis added.) For purposes of this opinion I will assume that workers' compensation benefits are not paid "pursuant to state or federal program" within the meaning of Iowa Code subsection 668.14(1).

Under subsection (1) of this statute, evidence of certain collateral benefits paid the plaintiff is clearly admissible. The statute says "the court *shall permit*" such evidence. Subsection (2) allows the plaintiff to counter this evidence by introducing evidence of the cost of obtaining the collateral benefits and evidence of any rights of subrogation relating to the benefits. The language could not be more clear. The evidence excluded by the trial court here should have been admitted.

By enacting section 668.14, the legislature intended to change the evidentiary portion of the judicially created collateral source rule. The statute allows the factfinder to consider all the facts concerning payment of the plaintiff's losses. Under the common law collateral source rule, the factfinder is not given all those facts.

III. I do not believe, however, that the legislature intended that a plaintiff in Schonberger's position should have his tort recovery reduced by the amount of collateral benefits and also have to repay the collateral benefits out of his remaining tort recovery. In this respect, I agree with the majority. In my view, however, the obvious inequity produced by such an application of section 668.14 is to be avoided in a jury case by appropriate jury instructions and interrogatories.

Under section 668.14, evidence of collateral benefits should be admitted pursuant to subsections (1) and (2). Then, pursuant to subsection (3), the jury should be instructed that if it finds liability it must find whether any of the plaintiff's claimed damages were or will be paid by collateral sources and, if so, how much. The jury should also be instructed to find whether any of those collateral sources are subrogated to the plaintiff's recovery from the tort defendant. Next, the jury should be instructed that if it finds that such rights of subrogation do exist, the plaintiff's recovery from the defendant *may not* be reduced by the amount of those collateral benefits. Finally, the jury should be asked to state the amount of economic losses of the plaintiff that were or will be paid by collateral sources and which are also included in its jury award to the plaintiff.

The result of this approach would be to prevent double dipping—which only occurs in cases where the plaintiff receives collateral benefits which are not subject to subrogation—but avoid the inequity correctly perceived by the majority. At the same time, the evidence called for by the legislature in section 668.14 would be admitted. Where the collateral benefits are not paid subject to rights of subrogation, it is left to the jury to prevent or allow double dipping.

IV. Instead of working within the statutory framework mandated by the legislature in section 668.14, the majority opinion sets it aside. The majority's approach would require the trial judge to exclude all evidence from the jury of collateral benefits as irrelevant whenever the judge found that the benefits were paid subject to a

right of subrogation. It would then be up to the judge to enforce those subrogation rights at a separate hearing following a plaintiff's verdict in the tort suit.

The majority's approach has some appeal and, in fact, is almost exactly what the minority of the liability study commission proposed. *See Liability Report* at 162–63. But this approach was rejected by the legislature when it followed the recommendation of the majority of the study commission and enacted section 668.14. The legislature opted for open revelation to the factfinder of evidence concerning collateral benefits.

The majority indicates that an absurd result, not intended by the legislature, would be reached by a literal application of section 668.14. When evidence made admissible in subsections 668.14(1) and 668.-14(2) is accompanied by appropriate instructions pursuant to subsection 668.14(3), an absurd result is avoided and the entire statute is given effect.

V. I would reverse the trial court judgment and remand for a new trial on the issue of damages. The parties should be allowed to introduce evidence before the jury pursuant to Iowa Code section 668.14. Then the jury should be instructed appropriately and allowed to state the effect of such evidence on its verdict.

The court should work within the intent and language of section 668.14 rather than against it. Section 668.14 was the result of a studied decision by the legislature to abrogate the collateral source rule as a common law rule of evidence, and to prevent double dipping. The majority effectively refuses to acknowledge that fact. Therefore, I dissent.

NEUMAN and ANDREASEN, JJ., join this dissent.