**Leon LOFTSGARD, Individually and as Administrator of the Estate of Scott Leon Loftsgard, Deceased; and Nancy A. Loftsgard, Appellants,**

v.

**Patrick Joseph DORRIAN; Carrier Corporation, a Corporation; Dart & Kraft Financial Corporation–VMG, n/k/a D & K Financial Corporation, a Corporation; Michael James Foster; and Frances H. Foster, Appellees.**

No. 90–1446.

Court of Appeals of Iowa.

Aug. 27, 1991.

---

Richard C. Garberson, Diane Kutzko, and Wayne C. Collins of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for other appellees.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Scott Loftsgard, an unmarried thirty-year-old man, was fatally injured in an automobile accident. He died at a hospital some six to seven hours after the accident.

Scott's father, Leon Loftsgard, as the administrator of Scott's estate, filed the present wrongful death action against several defendants. The defendants include the driver and owner of the car in which Scott had been riding (Fosters), the driver of the other vehicle (Dorrian), the corporation which employed Dorrian and leased his vehicle, and the corporation that actually owned the Dorrian vehicle.

Scott's parents, in their individual capacity, joined the suit as additional plaintiffs. They sought damages for loss of Scott's consortium. However, the district court granted defendants summary judgment as to this claim.

The administrator's wrongful death claim was then tried to a jury. The jury awarded the estate the following damages: $32,000 for the present value of the loss to the estate of Scott's future earnings, $500 for pain and suffering between the accident and the death, and $383.22 for medical and hospital expenses. The award for medical and hospital expenses, $383.22, is the difference between the actual amount of those expenses ($10,526.10) and the portion of those expenses covered by medical insurance ($10,142.88).

The plaintiff-administrator and Scott's parents appeal the judgment. Scott's parents contend the district court erred by granting the defendants summary judgment on their claim for the loss of Scott's consortium. The administrator contends the verdict is inadequate and unsupported by the evidence.

The administrator challenges each of the three components of the verdict. First, the

Keith Stapleton and Richard A. Pundt, Cedar Rapids, for appellants.

Robert R. Rush and Matthew J. Nagle of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellees Foster.

administrator argues that the $32,000 award for loss to the estate is inadequate in light of the evidence concerning Scott's earning capacity, life expectancy, and frugal habits. Second, the administrator argues the award of $500 for pain and suffering was inadequate. Third, in challenging the award for medical expenses ($383.22), the administrator argues the jury should have awarded the entire amount of medical expenses rather than the amount not covered by insurance.

As it relates to the award for medical expenses, the insurer which paid most of the medical expenses filed a subrogation claim. Thus, the administrator asserts the verdict as formed by the jury creates an inconsistency. The administrator argues he will be required to pay back the insurance benefits from the tort recovery, while at the same time the tort recovery was reduced by the amount of the insurance benefits.

The administrator also contends the verdict was contrary to the evidence for it allocated no fault to the driver of the car in which Scott had been riding. In addition, the administrator asserts the district court erred by excluding the testimony of one of its proposed expert witnesses. Finally, the administrator contends the district court erred by refusing to give instructions allowing the jury to award punitive damages against both of the defendant drivers.

Since this appeal is at law, our review is on assigned error only. Iowa R.App.P. 4.

■ I. *Sanctions Prohibiting Plaintiff's (Administrator) Use of Expert Witnesses.* In reviewing a trial court's ruling excluding a witness, we apply an abuse of discretion standard. *Kilker By and Through Kilker v. Mulry,* 437 N.W.2d 1, 6 (Iowa App.1988). "[A]n abuse of discretion [is found only] ... when such discretion is exercised on grounds or for ... reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 4, citing *Hubby v. State,* 331 N.W.2d 690, 697 (Iowa 1983).

The plaintiff argues the trial court's May 1, 1990, order excluding Dr. Sannito's testimony was erroneous and constituted an abuse of discretion. We are not convinced

the plaintiff preserved error on this issue for we are unable to find that an offer of proof was made as to the substance of the expert's testimony. *See Williams v. Dubuque Racing Ass'n,* 445 N.W.2d 393, 394 (Iowa App.1989); *Wernimont v. International Harvester Corp.,* 309 N.W.2d 137, 143 (Iowa App.1981). Nonetheless, when we address this issue on the merits, we find no abuse of discretion in the trial court's ruling.

■ Plaintiff argues the trial court erred because Dr. Sannito's interrogatory answer was supplied within thirty days of trial. While this is true, a problem is presented for the plaintiff failed to timely designate Dr. Sannito as an expert witness as required by the August 10, 1989, and the February 13, 1989, order.

On August 10, 1989, the trial court ordered that all of plaintiff's expert witnesses be designated by October 30, 1989. On October 30, 1989, plaintiff did serve supplemental interrogatory answers designating ten expert witnesses. However, plaintiff did not designate Dr. Sannito at that time.

Plaintiff also failed to identify the testimony of its experts as required by Iowa Rule of Civil Procedure 125(a)(1). Defendants requested plaintiff identify the substance of the expert testimony and, receiving none, filed a motion to strike the plaintiff's experts. The trial court overruled that motion but ordered plaintiff to provide supplemental interrogatory answers by February 26, 1990, for previously identified experts. The plaintiff did timely provide the answers and also, for the first time, identified Dr. Thomas Sannito as an expert witness.

Soon after the plaintiff identified Dr. Sannito as an expert witness, the defendants filed a motion to preclude his testimony. The trial court sustained the motion and, in doing so, stated:

As of February 13, 1990, no reference had been made to Thomas Sannito appearing as a witness on behalf of Plaintiffs at time of trial. On February 26, 1990, Plaintiffs, in supplementing answers to interrogatories, set forth Thomas Sannito's name. This was the first

identification of Mr. Sannito as a possible witness at time of trial. No reason or explanation has been offered by Plaintiff concerning failure to timely respond to discovery concerning identification of Dr. Sannito as a witness at time of trial. Taking into consideration the time standards for case processing, the trial is scheduled to be had in less than two months, all discovery has been closed as of April 30, 1990, pursuant to Judge Brady's order, and the other facts and circumstances aforementioned, the motion is sustained.

We conclude the trial court did not abuse its discretion when it excluded the testimony of this witness. We affirm on this issue.

II. *Motion for New Trial.* The plaintiff's second argument involves the trial court's rejection of a motion for new trial. The motion was based on inadequacy of damages with regard to medical expenses, estate damages, and pain and suffering. We will address each of these separately.

■ The trial court has broad discretion in passing on a motion for new trial, and only where there is a clear abuse of discretion will the appellate court interfere with the ruling upon such motion. *Houvenagle v. Wright*, 340 N.W.2d 783, 785 (Iowa App. 1983).

A. *Medical Expenses.* The plaintiff alleges the damages awarded by the jury for medical expenses were inadequate and failed to respond to evidence. The facts surrounding the award of medical expenses are as follows. During trial the decedent's father took the stand and testified to the amount of medical expenses incurred during the time his son was hospitalized. While testifying, plaintiff's attorney illicited from Loftsgard the amount of expenses and also the amount covered by insurance. The difference between these two figures amounted to $383.22. That is the amount the jury awarded for medical expenses. The plaintiff now claims awarding this amount was error for it permits the tortfeasors to mitigate damages.

Iowa Code section 668.14 has partially abrogated the collateral source rule and permits evidence and argument as to the payment of actual economic losses incurred for medical care. It further provides that plaintiff may then introduce evidence concerning cost of procuring the insurance, as well as any existing rights of indemnification or subrogation relating to the previous payments or future rights of payment. Iowa Code § 668.14(2).

In this case, evidence was introduced by plaintiff as to the amount of medical expenses incurred, the amount paid by insurance, and the balance of the out-of-pocket expenses of $383.22. There is also evidence regarding the subrogation rights of United Fire and Casualty. Mr. Loftsgard additionally testified that if there is no recovery from the jury, reimbursement to the insurance company is not required.

The Iowa Supreme Court case of *Schonberger v. Roberts*, 456 N.W.2d 201 (Iowa 1990), is instructive, but not determinative of the issue before us. In *Schonberger*, the plaintiff, while in the apparent course of his employment, was injured in an automobile accident. He brought suit against the owner and driver of the other vehicle.

During the course of the trial, defendants sought to introduce evidence under section 668.14 regarding the payment of medical bills and other workers' compensation benefits to Schonberger. The trial court ruled the evidence inadmissible. The supreme court, in a six to three decision, affirmed.

The majority in *Schonberger*, through Justice Harris, recognized that under section 85.22 of the Code employers (or their insurers) under workers' compensation have the right of indemnity for amounts paid under the Act from recovery realized by the worker in tort actions for the same injuries. In affirming the trial court's decision to not admit evidence regarding payment of medical bills and other workers' compensation benefits, the majority stated:

> A literal application of section 668.14 under the present circumstances would also lead to an absurd result. Under section 85.22 Schonberger must repay from his recovery his workers' compensation in-

surer any benefits he has received. The only conceivable purpose of informing the jury of those benefits is to invite the jury to reduce his recovery because of them. But, to any extent the jury does reduce the damage award because of the benefits, Schonberger is in effect paying, not once, but twice. We are convinced the legislature did not intend to call for this double reduction.

To avoid this unintended result we interpret the statute so as to deem its requirements satisfied when the requirements of section 85.22 are complied with. The case is remanded to district court for a proceeding in which it must be established that the proceeds of any recovery received by Schonberger are pledged to reimburse his workers' compensation insurer in accordance with Iowa Code section 85.22. Upon such a showing the judgment of the trial court shall stand as affirmed.

*Id.*, 456 N.W.2d at 203.

It is clear that section 668.14 was adopted by the legislature to prevent an injured person to recover twice for the same injury. In the context of the workers' compensation act (section 85.22), it serves to prohibit an injured worker to recover twice for the same industrial injury. *Id.* at 202. Both sections to some extent lift the barriers of the common law collateral source rule. Under that rule, a tortfeasor's obligation to make restitution for an injury he or she caused is undiminished by any compensation received by the injured party from a collateral source. *Id.*

Thus, in affirming the trial court's decision to preclude the evidence relating to payment of medical bills and other workers' compensation benefits, the majority in *Schonberger* reasoned that to permit such evidence would, in effect, result in a double reduction, i.e., once by the jury when it considers such evidence in reducing its verdict, and a second time when the employer or its insurer exercises its right of indemnity.

The dissenting opinion, written by Chief Justice McGiverin, concluded that the evidence should have been received under section 668.14, subsections (1) and (2). The dissent is instructive for it may well set the tune that should be struck in cases where subrogation and indemnity rights are not statutorily prescribed. To fortify its position that the evidence should have been received, the dissent states:

> Then, pursuant to subsection (3), the jury should be instructed that if it finds liability it must find whether any of the plaintiff's claimed damages were or will be paid by collateral sources and, if so, how much. The jury should also be instructed to find whether any of those collateral sources are subrogated to the plaintiff's recovery from the tort defendant. Next, the jury should be instructed that if it finds that such rights of subrogation do exist, the plaintiff's recovery from the defendant *may not* be reduced by the amount of those collateral benefits. Finally, the jury should be asked to state the amount of economic losses of the plaintiff that were or will be paid by collateral sources and which are also included in its jury award to the plaintiff.

*Id.* at 205.

The majority and minority opinions are similar in many respects. Each recognizes that one effect of the common law collateral source rule is that in cases when plaintiff receives collateral benefits which are not paid subject to a right of subrogation in the payor and also is compensated for the same injuries from a tort suit against a defendant, the plaintiff receives duplicate damages (double dipping)[1] to the extent that the collateral benefits and tort recovery overlap. Each also recognizes that a plaintiff in Schonberger's position should not have his tort recovery reduced by the jury by the amount of collateral benefits on the one hand and also have to repay the collateral benefits out of his remaining tort recovery.

---

1. Where collateral benefits are paid subject to the right of subrogation, there can be no double dipping because the subrogee will recover collateral benefits out of plaintiff's tort recovery from defendant.

The majority and minority differ, for the most part, only on the procedure that should be followed during the course of the trial to avoid double dipping and yet make certain that the plaintiff does not have his recovery reduced twice. The majority essentially concludes, at least in workers' compensation cases where the right of subrogation is a statutory certainty, that the evidence of the collateral payment is inadmissible, while the minority says it should be received under section 668.14 with the jury making the final decision under proper instructions from the court.

We turn now to the problem before us. Unlike the *Schonberger* case, we do not have an evidentiary problem. From the record it is apparent the problem for the most part was created by the plaintiff for it was the plaintiff who introduced into evidence, without objection, the amount of medical expenses incurred and the amount paid by his decedent's employer. That evidence reveals the insurance carrier paid $10,142.88 of decedent's $10,526.10 total hospital and medical bills.

█ The result reached in this case is the very circumstance that Justice Harris envisioned in his majority opinion in *Schonberger*. The plaintiff is caught in a double reduction, once at the hands of the jury by the verdict of $383.22, and again by virtue of the subrogation rights of United Fire & Casualty. But this result could have been avoided for once the collateral source evidence was received, the procedure suggested by the Chief Justice in his dissenting opinion and as set forth in section 668.14 should have been employed. However, we are unable to reverse for the plaintiff neither objected to the instructions nor requested instructions on this segment of the law.[2]

This then brings us to the question of how to resolve this rather apparent inconsistency. First we decline plaintiff's request for a new trial. Error was not preserved. The defendants[3], however, suggest in a footnote in their brief that assuming the jury should have made an adjustment for the subrogation entered that it can be corrected by the court awarding $10,562.10 for the total medical expenses. We believe this matter should be remanded for this purpose.

We, therefore, remand this case to the district court for a proceeding in which it must be established that the proceeds of any recovery received by the plaintiff for medical and hospital expenses are pledged to reimburse United Fire & Casualty. Upon such a showing, the judgment for medical expenses is to be increased to the amount of $10,562.10. If such showing is not made, the judgment shall remain in the amount fixed by the jury.

We remand for this limited purpose only. We do not retain jurisdiction. Our grounds for remand are that the medical expenses incurred of $10,562.10 are not disputed in any respect nor is the amount paid by the insurance carrier of $10,142.88 disputed.

█ B. *Physical Pain and Suffering.* The jury awarded plaintiffs $500.00 for physical pain and suffering. There was significant evidence the decedent did not suffer any pain between the time of the accident and the time of his death. However, there was some evidence by one doctor which would indicate the decedent did experience some pain.

In jury trials controverted issues of fact are for the jury to decide. That is what juries are for. To hold that a judge should set aside a verdict just because he would have reached a different conclusion would substitute judges for juries. It would relegate juries to unimportant window dressing. That we cannot do.

*Kaiser v. Stathas*, 263 N.W.2d 522, 525 (Iowa 1978).

The jury was entitled to evaluate the contested evidence with regard to pain and suffering, and the trial court was correct in not substituting its own judgment for that

---

**2.** Additionally, the plaintiff failed to request submission of a special interrogatory pursuant to Iowa Code section 668.14(3) and also failed to object to its omission.

**3.** The defendants that make this suggestion are Dorrian, Carrier Corporation, and D & K Financial Corporation.

of the jury. *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 861 (Iowa 1973). The jury was instructed on pain and suffering and determined $500.00 was the appropriate amount based upon the evidence presented. This award is supported by substantial evidence and we decline to disturb it on appeal.

C. *Value of Estate.* We also find that this award should not be disturbed on appeal. The facts of this case support the amount awarded by the jury. The decedent was single and had no children. He lived with his parents. It is clear the jury took into account the decedent's accumulated assets and his life expectancy. The jury was instructed properly and it was well within their province to make the award they did. *Olsen v. Drahos*, 229 N.W.2d 741, 742–43 (Iowa 1975). We find no error and affirm on this issue.

III. *Loss of Consortium.* The Loftsgards asked for damages based upon loss of consortium for their adult child. The trial court dismissed this claim. The Loftsgards claim the court erred in doing so arguing an equal protection violation.

Recently the Iowa Supreme Court spoke on this issue and determined parents do not have a cause of action for the loss of consortium of an adult child. *Ruden v. Parker*, 462 N.W.2d 674, 676 (Iowa 1990). The court further held the distinctions made by rule 8 do not deny the parent of equal protection, noting the relationship between parent and child changes as the child becomes emancipated. *Id.* The *Ruden* case is completely dispositive of this issue. We therefore affirm the trial court on this issue.

IV. *Punitive Damages.* The plaintiff contends the trial court erred in refusing to submit the issue of punitive damages to the jury. The trial court directed out all punitive damages claims against all defendants.

To support a punitive damages claim, plaintiffs must present evidence showing defendants acted with actual or legal malice. *Briner v. Hyslop*, 337 N.W.2d 858, 867 (Iowa 1983). There is no evidence defendant Foster acted intentionally or maliciously toward the decedent. The same can be said for Dorrian. While he admittedly ran a stop sign, there was no evidence to suggest the action was taken in a willful, wanton or malicious manner. As to Dorrian's employer, vehicle owners cannot be held liable for punitive damages based on the alleged reckless conduct of a permissive driver. *Id.* Additionally, as to the owner of the Foster vehicle, there is no statutory or common law authority permitting a vicarious punitive damage claim against the owner of an automobile based merely on ownership. *Id.* After a thorough review of the record, we find nothing to suggest punitive damages should have been submitted to the jury.

V. *Claim Against Foster.* The administrator claims the verdict is contrary to the evidence for it failed to allocate fault to the driver of the car in which Scott was riding. We have reviewed the record and find no error. The jury, as the trier of fact, reached its decision. That decision is supported by substantial evidence.

We affirm the trial court in all respects.

AFFIRMED AND REMANDED WITH THE DIRECTIONS AS WE SET FORTH UNDER PART II(A).

OXBERGER, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I would affirm the trial court in all respects.