**Danny Varlon TAYLOR and Norma Jean Taylor, Appellees,**

v.

**PRE–FAB TRANSIT CO., Appellant.**

**No. 79–1133.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1979.

Decided March 5, 1980.

William H. Kennedy, III, Rose, Nash, Williamson, Carroll, Clay & Giroir, Little Rock, Ark., argued, Webb Hubbell, Little Rock, Ark., on brief, for appellant.

Bernard Whetstone, Whetstone & Whetstone, Little Rock, Ark., for appellees.

Before BRIGHT, Circuit Judge, MARKEY, Chief Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

Defendant-appellant Pre-Fab Transit Co. appeals from a judgment of the United States District Court for the Eastern Dis-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

trict of Arkansas awarding plaintiff Danny Varlon Taylor $95,786.31 for his injuries and plaintiff Norma Jean Taylor $2,500.00 for loss of consortium. On appeal defendant does not question liability, but rather argues that the award to Danny Varlon Taylor is excessive and based on speculation and sympathy.

On July 22, 1976 plaintiff Danny Varlon Taylor was injured in a traffic accident while riding as a passenger in a truck owned by his employer, the Jackson Cookie Company. The accident occurred when a truck driven by Thomas Beck, while in the course and scope of his employment with the Pre-Fab Transit Co., struck the rear of the Jackson Cookie Company truck. As a result of the collision plaintiff Taylor was thrown about the vehicle and hit his head on the windshield. Although property damage was minor, Taylor was taken by ambulance to a nearby hospital where he was examined and released. Later, however, Taylor experienced neck pain due to the accident and had to return to hospitals on three separate occasions for additional care as well as various tests including a myelogram and an electromyogram.

At trial Taylor testified that he has suffered constant pain as a result of the accident. Further, Taylor's physician, an orthopedic specialist named Thomas Rooney, testified by deposition that an electromyogram test revealed that the accident caused a nerve irritation problem known as a "cervical disc syndrome" probably resulting from a bulging or ruptured disc in his neck. Dr. Rooney also testified that plaintiff had a functional disability of 10% in the use of his neck and it was concluded that Taylor's condition and the resultant pain would likely be permanent.

Taylor's condition since the accident has not only caused him discomfort, but also has affected his work performance. At the time of the accident, Taylor was earning $178.00 a week and had worked steadily for the Jackson Cookie Company for a year and a half after previous employment for two years with another company. Since the accident, however, Taylor has become an undependable employee, not due to lack of motivation, but rather to the pain he experiences as a result of the accident. Moreover, Taylor has missed many days of work because of his neck problem. The parties stipulated that Taylor missed seven weeks of work in 1976 (a loss of $1,246.00 income to Taylor), forty weeks of work in 1977 (a loss of $7,120.00), and eight weeks of work in 1978 (a loss of $1,424.00).

Following a bench trial at which these facts were developed, the district court, as indicated, awarded damages in the amount of $95,786.31 to plaintiff Danny Varlon Taylor and damages in the amount of $2,500.00 to plaintiff Norma Jean Taylor, plus interest and costs.

On appeal defendant contests the overall size of the damage award and also argues that certain items which comprise the district court's total award, namely damages in the amount of $6,994.97 for future medical expense, $9,790.00 for lost past wages, $54,082.75 for lost future income, and $15,000.00 for pain, suffering and mental anguish, are excessive and completely unsupported by the evidence.

It is well established that the amount of damages in a nonjury case is within the discretion of the trial court and cannot be overturned unless clearly erroneous. *Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 786 (8th Cir. 1976); *Zatina v. Greyhound Lines, Inc.*, 442 F.2d 238, 242–43 (8th Cir. 1971). *See generally*, 6A J. Moore, Federal Practice § 59.05(3) at 59–68 (2d ed. 1974). Indeed, an appellate court will not reverse the trial court findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969), *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

After carefully reviewing the complete transcript, the record and the briefs of the parties, we are convinced that the overall award to Danny Taylor is generous in the extreme. However, in reviewing the specific items from which the award to Taylor

is aggregated, we find clear error as to only two items. These we discuss briefly.

First, we believe that the district court clearly erred in its award of lost wages and related benefits, particularly with respect to its award of $7,120.00 for lost wages in the year 1977. While it is true that the plaintiff missed forty weeks of work in 1977, the trial court seemed to assume, without adequate basis, that these absences and concomitant loss of earnings were attributable entirely to the injury sustained from the accident. The record, however, does not so reflect.

In the year of the accident, 1976, plaintiff missed only seven weeks of work in the five months of that year following the accident. In 1978 plaintiff missed only eight weeks of work up until the date of trial. Yet in 1977, the year that plaintiff received workmen's compensation, plaintiff missed forty weeks of work. The record further reveals that this gross disparity in the number of absences from work is not attributable to the fact that the numbers of absences in 1976 and 1978 are not based on full working years. Nor is it a result of additional hospitalization, medical treatment or even great pain. Although the trial court may have been justified in finding some loss of earnings for the year 1977, we find nothing in the record which indicates that plaintiff's full loss of earnings for 1977 was due to his neck injury.

We also have difficulty with the district court's award of $6,994.97 for future medical expense. As the trial judge observed:

> Plaintiff himself estimated his past expenses for drugs and medicine at $60 per month, but this testimony was rather halting and unspecific. No figure at all would have been forthcoming without considerable prompting from counsel. Plaintiff has been in the hospital several times in the past, but one reason for these visits (though not the only one) was to obtain tests for possible use in this litigation. Whether plaintiff will have to return to the hospital for surgery or other reasons is wholly speculative. He will continue to experience pain and to need medication to combat it, but this need will probably be less in the future.

The district court quite properly discounted heavily the probative force of plaintiff's estimate as a guide to determination of future medical expense and there simply is no other evidence that would justify an award of any particular sum. About all that could be predicted is that plaintiff will have some pain and require some medical attention. That is not enough to support the award.

If the record were such as to permit us to compute damages for lost wages and future reasonable medical expense, we would be inclined to make such computations in order to avoid further unnecessary delay and expense of litigation. But in the circumstances of this case, we must remand for a new trial unless plaintiff is willing to remit all damages in excess of $81,252.75.[1] In the event that such remittitur is made within thirty days, the judgment will stand affirmed with interest and costs to the plaintiffs-appellees, and no costs on appeal will be assessed in favor of either party. Absent such remittitur the judgment will stand reversed and remanded for new trial on the issues of future medical expenses and past loss of earnings.

---

1. The remittitur is calculated by adding the amount of lost wages attributed to 1977 in the amount of $7,120.00 plus fringe benefits calculated at $418.59 for that year to the award for future medical expense in the amount of $6,994.97 for a total of $14,533.56.