Sharon K. RYAN, Individually and as Mother and Next Friend of her Minor Children, James Ryan, Cyle Ryan, Timothy Ryan and Samantha Ryan, and Jeffrey R. Ryan, her Husband, Plaintiffs,

v.

FORTUNE TRANSPORTATION COMPANY and James D. Davis, Defendants/Third–Party Plaintiffs,

v.

Mark J. Tanner, Perishable Distributors of Iowa, Ltd., Stephen Stanbridge, and B–T, Inc., Third–Party Defendants.

No. 1:00–CV–40074.

United States District Court, S.D. Iowa, Western Division.

April 11, 2003.

Alan E. Fredregill, Eidsmoe, Heidman, Redmond & Fredregill, Sioux City, IA, for plaintiffs.

Patrick J. McNulty, Grefe & Sidney PLC, Des Moines, IA, for defendants.

Kenneth R. Munro, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, IA, Eugene P. Welch, Gross & Welch, Omaha, NE, G. Williams Smits, Gross & Welch PC, Council Bluffs, IA, for third-party defendants.

## RULING ON POST–TRIAL MOTIONS

GRITZNER, District Judge.

Before the Court are various post-trial motions of the parties as well as applications for review of taxation of costs submitted by the Plaintiffs and Defendants Fortune Transportation and Davis. The litigation stems from a December 30, 1998, motor vehicle accident.

A jury trial began November 18, 2002. On November 26, 2002, the jury returned its verdict in favor of the Plaintiffs and against Defendants Fortune Transportation Company and James Davis, and against Third–Party Defendants Mark Tanner and Perishable Distributors of Iowa, Ltd., in the total amount of $1,035,751.50. The jury found no fault on the part of Third–Party Defendants Stephen Stanbridge and B–T, Inc. The jury assigned 10 percent of the fault to the Plaintiffs, 40 percent of the fault to Defendants Fortune Transportation and Davis, and 50

percent of the fault to Third–Party Defendants Tanner and Perishable Distributors.

Judgment was entered in the case on December 2, 2002. On December 16, 2002, Plaintiffs submitted their bill of costs, seeking $8,872.41. On December 18, 2002, Defendants Fortune Transportation and Davis submitted their bill of costs, seeking $8,246.11.

In a post-trial motion filed fourteen days after entry of judgment, Plaintiffs requested a "new trial on the issue of damages only, or in the alternative, to alter or amend the judgment by additur". Plaintiffs identify their motion as being one brought "all pursuant to Federal Rule of Civil Procedure 59".[1]

Specifically, Plaintiffs challenge (1) the 10 percent apportionment of fault attributed to Sharon Ryan; (2) the 10 percent reduction of Timothy and Samantha Ryan's personal injury award; (3) the $150,000 awarded for Sharon Ryan's past pain and suffering as inadequate as a matter of law; (4) the $50,000 awarded for Sharon Ryan's future pain and suffering as inadequate as a matter of law; and (5) the $433 and $318.50 awarded to Timothy and Samantha respectively for past medical bills as inadequate as a matter of law because no award for corresponding pain and suffering was given.

Defendants Fortune Transportation and Davis and Third–Party Defendants PDI and Tanner have resisted the Plaintiffs' motions and have filed post-trial motions of their own. Moving under the provisions of Fed.R.Civ.P. 59(e), they ask that the verdict be altered or amended to conform to the evidence. Specifically, Defendants and Third–Party Defendants ask this Court to (1) reduce the amount awarded to Plaintiffs for compensated past medical expenses by the amount Plaintiffs do not need to repay their health insurance provider; (2) reduce the amount awarded to Sharon Ryan for past wage loss; and (3) reduce the amount awarded to Shar-

on Ryan for future medical expenses. Oral arguments were heard on the parties' post-trial motions on February 27, 2003.

On March 6, 2003, the Clerk of Court entered taxation of costs, granting Plaintiffs $295.00 (the only costs incurred prior to a more favorable offer of settlement being tendered by Defendants Fortune and Davis than what was recovered by Plaintiffs against them at trial). Finding Defendants Fortune Transportation and Davis' request for costs untimely,[2] the Clerk of Court did not address them. On March 11, 2003, Plaintiffs sought review of the Clerk's determination of costs, and Defendants Fortune Transportation and Davis filed the same motion the next day. The post-trial motions and bill of cost motions of the parties are fully submitted and ready for ruling.

## I. Plaintiffs' Post–Trial Motions

■ At oral argument, Defendants Fortune Transportation and Davis correctly argued that, in federal court, additur is unconstitutional because it does not comport with the Seventh Amendment right to trial by jury. *See Dimick v. Schiedt,* 293 U.S. 474, 482, 484–86, 55 S.Ct. 296, 79 L.Ed. 603 (1935). The Eighth Circuit Court of Appeals has accepted "the general rule that in a case where the amount of damages is in dispute, a grant of additur violates the 7th Amendment jury trial rights against whom the addition is granted". *See Novak v. Gramm,* 469 F.2d 430, 432 (8th Cir.1972) (citing *Dimick,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935)). Therefore, this Court only addresses Plaintiffs' motion for new trial on the issue of damages.

■ A new trial can only be granted on the basis that the verdict is against the weight of the evidence, so that granting a new trial would prevent a miscarriage of justice. *White v. Pence,* 961 F.2d 776, 780

---

1. Rule 59 motions of any kind, whether it be a motion for new trial under 59(a) or a motion to alter or amend the judgment under 59(e), must be filed within 10 days of the entry of judgment. *See* Fed.R.Civ.P. 59. "Fed.R.Civ.P. 6(a) governs the computation of the time period for filing a timely Rule 59(e) motion." *Parkus v. Delo,* 985 F.2d 425, 425 (8th Cir.1993). "Under Rule 6(a), intermediate Saturdays, Sundays, and legal holidays are excluded from the ten day time period

for filing a Rule 59(e) motion." *Id.; see also Lomax v. Armontrout,* 923 F.2d 574, 575 (8th Cir.1991). Computing the 10–day time period in this fashion, Plaintiffs filed their post-trial motion within 10 days of the entry of judgment.

2. *See* S.D. Ia. L.R. 54.1(A) which requires a party entitled to recover costs to complete form A.O. 133 and serve and file form A.O. 133 within 14 days after entry of judgment.

(8th Cir.1992); *see also S & W Agency, Inc. v. Foremost Insurance Co.,* 51 F.Supp.2d 959, 981 (N.D.Iowa 1998). "[F]ixing damages is peculiarly a jury function and its award will be sustained unless shown to indicate prejudice, mistake, or a complete disregard of law and evidence." *Wright v. Hoover,* 329 F.2d 72, 76 (8th Cir.1964). Under Iowa law, the verdict of a jury should not be altered "unless the plaintiff proves the verdict: (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption [the verdict] is a result of passion, prejudice, or other ulterior motives; or (4) is lacking in evidential support." *See Riniker v. Wilson,* 623 N.W.2d 220, 230 (Iowa Ct.App.2000). The focus of the court must remain on determining "whether, under the record, giving the jury its right to accept or reject whatever portions of conflicting evidence it chose, the verdict effects substantial justice between the parties." *Cowan v. Flannery,* 461 N.W.2d 155, 158 (Iowa 1990) (quoting *Kautman v. Mar–Mac Comm. Sch. Dist.,* 255 N.W.2d 146, 148 (Iowa 1977)).

■ In light of this authority, of the five specific points raised in Plaintiffs' post-trial motions, all are denied; only one point merits discussion. In their brief, Plaintiffs cite *Brant v. Bockholt,* 532 N.W.2d 801 (Iowa 1995), arguing that when the jury awarded $433 to Timothy and $318.50 to Samantha for stipulated past medical expenses, but no amount for past pain and suffering, the jury created an award inadequate as a matter of Iowa law. *Brant* does not support Plaintiffs' contention.

At oral argument, Plaintiffs' counsel pointed to *Cowan,* arguing the case is authority that in Iowa, awarding an amount for past medical bills yet nothing for past pain and suffering is inadequate as a matter of law. *See Cowan,* 461 N.W.2d 155 (Iowa 1990). "Cowan testified that his head struck the windshield and his body struck the steering wheel." *See id.* at 159. "[H]e suffered severe headaches, dizziness, blurred vision and pain in the upper and lower back following the accident." *Id.* The jury ultimately provided an award allowing for past and future medical expenses, but no amount for past pain and suffering. *See id.* at 160.

The Iowa Supreme Court found that under the facts of *Cowan,* awarding an amount for past and future medical expenses but nothing for past and future pain and suffering was "illogical". *See id.* "[T]o award past and future medical expense incurred to relieve headache, neck and back pain and then allow nothing for such physical and mental pain and suffering" resulted in a situation where "[a]lthough the award may be adequate, a special verdict award of nothing for pain and suffering is inconsistent and unsupported by the evidence." *Id.* Only under the facts of *Cowan* was the particular jury award seen to be inadequate as a matter of law. As *Cowan* explains, Iowa has never adopted "an inflexible rule that every verdict awarding only damages for medical expenses in a personal injury action is inadequate as a matter of law". *Id.* at 159.

During the Ryan trial, the Court inquired, "What evidence do we have with regard to Timothy and Samantha with regard to their past pain and suffering?" Counsel for Plaintiffs responded, "Tim said he had a hurt toe, that's about it. We don't have any significant evidence with regard to Samantha." Counsel's response accurately summarized that evidence. Based on this record, awarding Timothy and Samantha an amount for past medical bills but nothing for past pain and suffering is not inadequate as a matter of law.

## II. Defendants' and Third–Party Defendants' Post–Trial Motions

The three specific points of Defendants' and Third–Party Defendants' post-trial motions all equate to a motion to alter or amend the judgment by remittitur. These will be addressed in turn.

### A. Application of § 668.14

■ For the first point raised in their post-trial motion, Defendants and Third–Party Defendants argue Plaintiffs will enjoy a double recovery unless this Court adjusts the jury verdict by that portion of the medical expenses paid by Plaintiffs' health insurer which does not need to be repaid. The Defendants and Third–Party Defendants argue

that because the parties stipulated Sharon Ryan's past medical expenses totaled $286,000 and have been paid by insurance, and of this amount paid, only $50,000 is to be refunded under the insurance carrier right of subrogation, without reducing Plaintiffs' award by $236,000, Plaintiffs recover twice. In their motion, Defendants and Third–Party Defendants argue this result is precisely what § 668.14 was designed to prevent.

In this case, pursuant to Iowa Code § 668.14, evidence was introduced at trial regarding previous payments of actual economic losses incurred for necessary medical care and the obligation of the Plaintiffs to repay any portion of such previous payments. The jury found that some of Sharon Ryan's damages had been paid by her insurance company and that an amount of $50,000 is to be refunded to her insurance company. The jury verdict clearly made no deduction for amounts previously paid through this insurance coverage.

Challenging the resulting verdict, Defendants and Third–Party Defendants argue that this Court has the necessary legal authority to make such a post-trial adjustment under Iowa Code §§ 668.3(4) and 668.3(5). These sections provide:

(4) The Court shall determine the amount of damages payable to each claimant by each other party, if any, in accordance with the findings of the court or jury;

(5) If the claim is tried to a jury, the Court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section.

See Iowa Code § 668.3.

Pursuant to § 668.14(3), the jury answered the special verdict form interrogatories (questions no. 19–22, taken from Iowa stock jury instruction 300.8). Defendants and Third–Party Defendants argue the legal effect of the answers given, similar to the legal effect of the jury's allocation of fault, is for the Court to determine under section 668.3(4). To summarize their argument, based upon the answers given to interrogatories 19–22 and based upon Iowa Code § 668.3(4), the Court must reduce the amount of medical expenses paid by Plaintiffs' health insurance company which do not need to be refunded. Defendants and Third–Party Defendants make the additional argument that Iowa Code § 668.14 would be obsolete and special verdict form questions 19–22 superfluous unless the verdict is reduced to prevent this double recovery.

Plaintiffs resist arguing Iowa Code § 668.14 does not automatically require a reduction of damages for medical benefits in a jury award just because the jury finds that the medical payments are not subrogated. Quoting the reasoning of the majority in *Schonberger v. Roberts,* 456 N.W.2d 201 (Iowa 1990), Plaintiffs point out that "[t]he only conceivable purpose of informing the jury of [benefits received which do not have to be paid back] is to *invite* the jury to reduce his recovery because of [receiving benefits which do not have to be repaid]." *Schonberger,* 456 N.W.2d at 203 (emphasis added). Plaintiffs argue that if the jury does not accept this "invitation" and does not reduce the award, this is acceptable under the statute. Additionally, Plaintiffs argue that construing section 668.14 in this manner will not render it obsolete since the section could still be used to resolve disputes between insurers and plaintiffs regarding the amount of subrogation payments to be made to the insurer. *See Principal Cas. Ins. Co. v. Norwood,* 463 N.W.2d 66 (Iowa 1990).

This Court recognizes that Iowa law, as it relates to the facts of this case, has developed from the dissent of then Chief Justice McGiverin in *Schonberger. See Schonberger,* 456 N.W.2d at 203; *see also Loftsgard v. Dorrian,* 476 N.W.2d 730, 734 (Iowa Ct.App. 1991) (indicating the dissent in *Schonberger* "is instructive for it may well set the tone that should be struck in cases where subrogation and indemnity rights are not statutorily prescribed."). This Court further acknowledges Plaintiffs' position is bolstered by Chief Justice McGiverin's comments that "[w]here the collateral benefits are not paid subject to rights of subrogation, *it is left for the jury to prevent or allow double dipping." Id.* at 205 (emphasis added).

Enacted in 1987, section 668.14 "is the product of a broad-ranging study conducted

by the Iowa Liability and Liability Insurance Study Commission . . .". *See id.* at 203. "The majority of the study commission recommended that the legislature enact a statute which would allow the factfinder in a tort suit to hear evidence and argument on certain collateral benefits in cases where the plaintiff's losses were 'replaced' or 'indemnified' by a collateral source." *Id.* at 204 (citing the Final Report of the Iowa Liability and Liability Insurance Study Commission at p. 134). "In those cases, *the factfinder would be allowed but not required to 'reduce the plaintiff's tort recovery* by the amount of the collateral benefits, presumably avoiding a double dipping situation whenever the factfinder took the collateral benefits into account." *Id.* (emphasis added). Section 668.14 is very similar to what was recommended by the majority of the Study Commission. *Id.*

It would appear that in order to accept Defendants' and Third–Party Defendants' position, this Court would have to find that the collateral source rule in Iowa has been completely abolished. Such a conclusion, however, has never been specifically held in Iowa cases discussing section 668.14. *See, e.g., Collins v. King,* 545 N.W.2d 310, 311–12 (Iowa 1996) (rejecting the argument that the Legislature, by creating section 668.14, intended a virtual abrogration, or at least a broad scale limitation of the collateral source rule for unintended torts); *see also Baumler v. Hemesath,* 534 N.W.2d 650, 654 (Iowa 1995) (indicating section 668.14 partially abrogates the collateral source rule); *Ray v. Paul,* 563 N.W.2d 635, 638 (Iowa Ct.App. 1997) (stating that the applicability of the collateral source rule has been reduced); *Loftsgard,* 476 N.W.2d at 733 (pointing out that section 668.14 has partially abrogated the collateral source rule).

In this case, the Court interprets the resulting verdict as the jury having declined to accept the invitation to reduce Plaintiffs' award. *See Schonberger,* 456 N.W.2d at 203. This is an acceptable result. *Id.* at 204. Viewing the determination of the jury in this fashion creates no collision with the provisions of § 668.3. This Court finds no authority under Chapter 668 to alter the jury verdict in the manner sought in the motion.

Defendants' and Third–Party Defendants' motion on this point is denied.

**B. Proof of Past Wage Loss**

The second issue raised in Defendants' and Third–Party Defendants' post-trial motion is a challenge to the past wage loss amount awarded to Sharon Ryan. They argue no evidence was introduced to suggest Sharon Ryan would have worked outside the home between January 1, 1999, and September 1, 2001, and argue no evidence exists showing that, even if Sharon Ryan would have worked during this time, she would have earned more than what. she was earning based on her part-time para-educator position. Accordingly, they argue the $29,000 awarded to Sharon Ryan for past wage loss must be reduced by the amount for which no evidentiary support exists.

Plaintiffs resist stating that more than sufficient evidence exists to sustain the $29,000 award. In their brief, Plaintiffs point to testimony from Dr. Sherman regarding the value of past household services as evidence supporting the $29,000 award. Replying, Defendants Fortune Transportation and Davis point out that loss of past household services can *only* be used to support a loss of consortium claim, not a claim for past lost wages. In this case, the jury awarded $60,000 to Timothy, Samantha, James, and Cyle Ryan for loss of parental consortium, and also awarded $70,000 to Jeff Ryan for loss of spousal consortium. Defendants argue Plaintiffs would recover twice (once by Sharon Ryan and once by the rest of her family) for the same injury if this Court allows the loss of household services to be used in determining Sharon Ryan's past wage loss.

■ At oral argument, Plaintiffs wisely abandoned the idea of using household services to support Sharon Ryan's past wage loss amount. The Iowa Supreme Court has indicated that loss of household services can be used to support a loss of consortium claim, not a wage loss claim. *See Gail v. Clark,* 410 N.W.2d 662, 667 (Iowa 1987). "Spousal consortium . . . includes the tangible benefits of general usefulness, industry, and attention within the home and family. It does not

include loss of monetary support from the injured spouse." *Id.* "Similar to spousal consortium, parental consortium also includes the tangible benefits of general usefulness, industry, and attention within the home and family . . . ." *Id.* It is the deprived spouse (or the deprived minor child, suing through their parent), not the injured person, who has the right to sue for and recover for loss of spousal (or parental) consortium. *See Madison v. Colby,* 348 N.W.2d 202, 208–09 (Iowa 1984).

■ In this case, the deprived spouse has recovered for loss of spousal consortium, and the deprived children have recovered for the loss of parental consortium. Plaintiffs have pointed to no other evidence supporting the $29,000 award for past wage loss of Sharon Ryan. This Court is compelled to reduce the amount of wage loss for which there is no evidentiary support.

Using the figures Dr. Sherman used at trial: $7,403 for lost wages for September 1, 2001, to September 1, 2002; $1,850.75 for the time September 1, 2002, to November 30, 2002 ($7,403 wage loss in one year equals $619.92 in lost wages per month, equals $1,850.75 in three months), for a total of lost wages from September 1, 2001, to November 30, 2002, of $9,253.75 ($7,403 plus $1,850.75 equals $9,253.75). The jury award must be reduced by $19,746.25 on this element of damages for a total award of $9,253.75 in lost wages.

## C. Proof of Future Medical Expense

Finally, in their post-trial motion, Defendants and Third–Party Defendants move to alter or amend the judgment regarding the $150,000 awarded to Sharon Ryan for future medical expenses. They argue Plaintiffs did not establish by expert medical testimony that based on a "reasonable medical certainty" it will be necessary that Sharon Ryan have the Neff Nail removed or have her leg amputated.[3] Therefore, it is argued the $150,000 awarded to Sharon Ryan for future medical expenses should be reduced since the need for future medical procedures and cost associated with such procedures has not been sufficiently established. Alternatively, Defendants and Third–Party Defendants argue that assuming *arguendo* Plaintiffs have created a jury issue on entitlement to future medical expenses, Sharon Ryan is limited to $54,000, and the $150,000 awarded to Sharon Ryan for future medical expenses should be reduced by $96,000.

Plaintiffs resist, citing testimony of Dr. Mormino regarding the prospects Sharon Ryan has for experiencing future pain, and testimony of Dr. Neff on how she might relieve this pain as support that the need for and costs of future medical treatment has been sufficiently established. For example, Dr. Mormino testified at trial that it was "likely it [Sharon Ryan's pain] will persist". Testifying as to available ways to treat this pain, he testified that it was his intention that the Neff Nail installed in Sharon Ryan's knee be a permanent fixture. Finally, Dr. Mormino testified that if Sharon Ryan wanted to have the Neff Nail removed, while the procedure was technically possible, he had never before removed an installed Neff Nail. Plaintiffs asked Dr. Neff, "If the pain is such that [Sharon Ryan] determines it appropriate to seek further care . . . do you have an estimate of the cost of a visit just to begin the exploration [of options available to alleviate the pain]?" Dr. Neff's response was that he did not "really have a clue what—we work here, and, you know, that's not a—but I would say radiographically it could be very expensive. You know, if you get into MR's, bone scans, selective injections and so forth, it could be fairly expensive." Plaintiffs' counsel asked, "In the thousands of dollars?", and Dr. Neff agreed, "Yes, it could be thousands of dollars."

Replying, Defendants Fortune Transportation and Davis point out that the testimony of Dr. Mormino and Dr. Neff addressed only future pain and suffering, not the need for and amount of future medical expenses. Defendants argue the element of future pain and suffering damages cannot be relied upon as support for the need and amount of future medical expenses. *See Matthess v. State Farm Mutual Automobile Ins. Co.,* 521 N.W.2d 699, 703 (Iowa 1994) (explaining that where damages have been itemized, each itemization is a special jury finding that must be supported in evidence).

---

**3.** At trial, the Court sustained objections to questions related to amputation.

"To recover the cost of future medical treatment, a plaintiff must furnish substantial proof of the necessity for future treatment and the cost thereof." *Mossman v. Amana Society*, 494 N.W.2d 676, 679 (Iowa 1993). The necessity for future medical treatment and the costs thereof should be testified to by someone qualified "upon which the jury may reasonably fix an allowance for this item". *See Shover v. Iowa Lutheran Hospital*, 252 Iowa 706, 107 N.W.2d 85, 95 (Iowa 1961). "It should not be left to guesswork." *Id.* The need for future treatment must be demonstrated to a reasonable medical certainty. *See Stanley v. State*, 197 N.W.2d 599, 607 (Iowa 1972).

In *Stanley*, a case where a child was injured in a car accident, it had been alleged that the minor sustained " 'severe and permanent personal injuries' including loss of a leg." *Id.* at 606. The jury allowed recovery for medical and hospital expenses, both past and future, in the amount of $6,000. *Id.* To establish future medical expenses, a letter had been introduced at trial without objection from a doctor stating that Stanley would need prosthetic revisions annually until adulthood and a completely new prosthesis "every two or three years". *Id.* at 607. The doctor indicated these were minimum estimates, stating the " 'conservative' cost would be from $50.00 to $75.00 for each revision and from $350.00 to $375.00 for each new appliance". *Id.* In the words of the Iowa Supreme Court, "[t]he need for future medical attention was fixed with certainty and the reasonable costs established." *Id.* However, the recovery for future medical and prosthetic expenses was reduced to $2,700, from the $6,000 awarded by the jury. *Id.*

In contrast to *Stanley*, the testimony of both doctors during the Ryan trial does not establish with substantial proof the need for and costs associated with future medical treatment beyond merely guessing. *See*

*Mossman*, 494 N.W.2d at 679; *see also Shover*, 107 N.W.2d at 95. At most, "[a]bout all that could be predicted is that plaintiff will have some pain and require some medical attention." *Taylor v. Pre–Fab Transit Co.*, 616 F.2d 374, 376 (8th Cir.1980). "That is not enough to support [an award of future medical expenses]." *Id.*

Lastly, in resisting, Plaintiffs argue that the jury was clearly impressed with the large amount of past medical expenses Sharon Ryan incurred and, based on these amounts, could reasonably conclude that Plaintiffs would incur about half that amount again in the future. This argument must fail due to the inherent reliance on pure speculation. *See Shover*, 107 N.W.2d at 95.

Plaintiffs have not established with substantial proof the need for and costs associated with future medical expenses to the necessary degree of certainty. The record made at trial does not support the $150,000 award for future medical expenses awarded by the jury, and the award must be reduced the full amount of $150,000.[4]

## D. Procedure on Remittitur

For whatever reason, perhaps strategic, Defendants and Third–Party Defendants never moved for new trial under Fed. R.Civ.P. 59(a), choosing instead to file their motion under Fed.R.Civ.P. 59(e). The substance of Defendants' and Third–Party Defendants' motion demonstrates the motion is a proper Rule 59(e) motion, as the three specific remedies requested by Defendants and Third–Party Defendants all relate to alteration or amendment of the verdict by specific dollar amounts. *See BBCA, Inc. v. United States*, 954 F.2d 1429, 1432 (8th Cir. 1992) (indicating that a motion seeking substantive change to judgment was a Rule 59(e) motion, and substance of the motion, not the

---

4. Addressing the alternative argument of Defendants and Third–Party Defendants, this Court finds that Plaintiffs have not sufficiently established the need for or costs associated with future medical treatment in any amount. Exhibit A, pp. 87–89, attached to the post-trial motion for Defendants and Third–Party Defendants, shows Plaintiffs' counsel asked, "Do you have an opinion based upon a reasonable degree of medical certainty of the probable costs of surgery *if for*

*some reason* you found it necessary or desirable to take down or remove that Neff Nail in Sharon's leg?" (emphasis added). In response, Dr. Mormino answered, "I would expect the surgical fees to be somewhere around $2,000, the hospitalization fee in the area of $20,000." Emphasizing the *"if for some reason"* language, the Court believes the testimony has not sufficiently established the need for future medical treatment.

form, controls what the motion is). Here, Defendants' and Third–Party Defendants' motion does not contain a request for a new trial, either expressed or implied, nor can the substance of the motion be construed as a motion under Rule 59(a).

█ Nevertheless, having found that the jury award must be reduced on the issues of Sharon Ryan's past wage loss and the issue of the need for and costs associated with future medical expenses, this Court cannot simply grant Defendants' and Third–Party Defendants' request to alter and amend the judgment in a way that effectively equates solely to a remittitur against Plaintiffs. To do so in a federal court would violate Plaintiffs' Seventh Amendment rights prohibiting the reexamination of facts determined by a jury. *See Hetzel v. Prince William County,* 523 U.S. 208, 211, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998) (citing *Kennon v. Gilmer,* 131 U.S. 22, 28–29, 9 S.Ct. 696, 33 L.Ed. 110 (1889)). To comport with the Seventh Amendment, Plaintiffs must be allowed an alternative of a new trial or acceptance of the remittitur. *See Thorne v. Welk Investment Inc.,* 197 F.3d 1205, 1212 (8th Cir.1999). This Court cannot find that Defendants and Third–Party Defendants can avoid the requirement of Seventh Amendment protection by filing this motion under Rule 59(e).

### III. Parties' Taxation of Costs

### A. Plaintiffs

Pursuant to Fed.R.Civ.P. 54(d), this Court reviews the Clerk of Court's taxation of costs in this matter. Rule 54(d) indicates that awarding costs is discretionary with the court, allowing the court to pursue a case-by-case approach, making cost decisions on the basis of the circumstances of each case. *See* Fed.R.Civ.P. 54(d) (stating "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs").

In this case, an offer of settlement from Defendants Fortune Transportation and Davis in the amount of $1,000,000 was tendered to Plaintiffs, and the Plaintiffs declined. At trial, the jury found Defendants Fortune Transportation and Davis liable in the amount of $414,300,60.

Where a settlement is offered but declined, "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." *See* Fed.R.Civ.P. 68. Citing Rule 68, the Clerk of Court granted $295.00, out of the $8,872.41 Plaintiffs requested, as the only costs incurred prior to Defendants Fortune Transportation's and Davis' more generous settlement offer.

In this case, the jury found Third–Party Defendants PDI and Tanner liable in the amount of $517,875.75. By operation of Iowa Code § 668.3, the contribution action is determined in the same proceeding and the Plaintiffs obtain a judgment against the Third–Party Defendants without the necessity of having asserted a direct claim against the Third–Party Defendants. Under this procedure, the Court concludes the Plaintiffs are prevailing parties against the Third–Party Defendants. The Clerk of Court's decision did not account for this. The balance of Plaintiffs' costs, $8,577.41, shall be paid by Third–Party Defendants PDI and Tanner.

### B. Defendants

Defendants Fortune Transportation and Davis ask this Court to review the Clerk of Court's taxation of costs, stating they are in "substantial compliance" and should have the full value of their costs paid. At the outset, this Court points out two problems with Defendants Fortune Transportation's and Davis' bill of costs. The filing was two days late, *see* S.D. Ia. L.R. 54.1(A), and also on the wrong form. *See id.* (requiring "a party entitled to costs" to "complete form A.O. 133").

While Defendants' "substantial compliance" argument might remedy the problem resulting from the type of form submitted, assuming the submission was timely, it does not necessarily follow that Defendants can be in "substantial compliance" with the *timing* of their request. This Court does not believe time deadlines lend themselves to the concept of substantial compliance—the deadline is met or it is not. Defendants' bill of costs filing was not timely, and the Clerk's decision

not to review this untimely submission was correct.

## IV. Conclusion

The Court conditionally denies Plaintiffs' request for a new trial, subject to Plaintiffs' acceptance or rejection of remittitur, and denies each point raised in Plaintiffs' alternative argument to alter or amend the judgment. The Court does order Third–Party Defendants PDI and Tanner to pay the remaining amount of Plaintiffs' costs in the sum of $8,577.41.

The Court agrees with Defendants and Third–Party Defendants on two of three points raised in their post-trial motion to alter or amend the judgment. The record does not support the total jury award in the amount of $1,035,751.50. Specifically, the jury awards for Sharon Ryan's past wage loss in the amount of $29,000 and for Sharon Ryan's future medical expenses in the amount of $150,000 are not supported by evidence in the record. The record supports an award for the past wage loss of Sharon Ryan in the amount of $9,253.75; Plaintiffs have failed to sufficiently establish the need for and costs of future medical expenses for Sharon Ryan. Therefore, Plaintiffs can accept a remittitur as to the past wage loss in the amount of $19,746.25 and a remittitur as to future medicals in the amount of $150,000 (total remittitur of $169,746.25), leaving a remaining award total of $866,005.25 reduced by the Plaintiffs' share of fault to $779,404.73. Alternatively, Plaintiffs can refuse to accept the remittitur, in which case, Plaintiffs' motion for new trial on the issue of damages will be granted only as to the issues of Sharon Ryan's past wage loss and her need for and costs of future medical expenses. Defendants' bill of costs was untimely and appropriately denied.

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiffs' motion for new trial (Clerk's No. 154.1), for the reasons Plaintiffs articulate in their post-trial motion, is **denied;**

(2) Plaintiffs' alternative motion to alter or amend the judgment (Clerk's No. 154.2) is **denied;**

(3) Plaintiffs' request for review of bill of costs (Clerk's No. 169) is **granted,** and Third–Party Defendants PDI and Tanner are ordered to pay the balance of Plaintiffs' costs in the amount of $8,577.41;

(4) Defendants Fortune Transportation's and Davis' and Third–Party Defendants' motion to alter or amend the judgment pursuant to Rule 59(e) (Clerk's No. 153) is **granted** as to Sharon Ryan's past wage loss and her need and the costs of her future medical expenses;

(5) In the alternative, if Plaintiffs do not accept the total remittitur, Plaintiffs will be granted a new trial only on the issues of Sharon Ryan's past wage loss and her need for and the costs of her future medical expenses. Plaintiffs will have 14 days after the date of this Order to notify this Court in writing whether they agree to remittitur in the total amount of $169,746.25. If Plaintiffs agree to this total remittitur, the Clerk of Court will be ordered to enter judgment in favor Plaintiffs and against Defendants Fortune Transportation Company and James D. Davis in the amount of $346,402.11, and against Third–Party Defendants Mark J. Tanner and Perishable Distributors of Iowa, Ltd., in the amount of $433,002.62 plus costs as allocated by this Order. If Plaintiffs reject the total remittitur or fail to respond within the time specified in this Order, a new trial will be ordered solely on the issues of Sharon Ryan's past wage loss and her need for and costs of future medical expenses; and

(6) Defendants' request for review of bill of costs (Clerk's No. 170) is **denied.**

**IT IS SO ORDERED.**