**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 15 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOHN T. ARCHER; VELMA J.
ARCHER; SHELBY CHARLES
ROAD PARTNERSHIP,

      Plaintiffs-Appellants,

v.

ROSS D. EILAND; WILLIAM
EILAND; DANIEL EILAND;
NADINE EILAND,

      Defendants-Appellees.

No.  02-5026
(D.C. No. 98-CV-889-K)
(N.D. Oklahoma)

---

**ORDER AND JUDGMENT**   *

---

Before  **LUCERO** ,  **McKAY** , and  **BALDOCK** , Circuit Judges.

---

John and Velma Archer brought this diversity suit in connection with their

purchase and ownership of real property.  They sued Nadine Eiland, the seller of

the land, alleging breach of warranty deed, and against Daniel, Ross, and Billy

---

*     The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Eiland on a nuisance theory. None of the Eilands appeared before the court, and the Archers filed a motion for default judgment. In reviewing the motion, the district court denied default judgment against Nadine and Daniel, but granted default judgment against Ross and Billy on the nuisance claim, awarding damages in the amount of $1,375.00. On appeal, the Archers argue that they were entitled to a default judgment against Nadine on the breach of warranty claim, and that the district court erred in limiting the nuisance damages. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

**I**

Plaintiffs John and Velma Archer and their Missouri partnership, Shelby Charles Road Partnership (collectively "the Archers") are the owners of several tracts of land along the Kansas/Oklahoma border, one of which, an eighty-acre tract ("the Eiland tract"), was purchased in 1993 from Joe Eiland and his widow, defendant Nadine Eiland. [1] The warranty deed conveying the Eiland tract to the Archers excepted from the conveyance a parcel which had been previously conveyed to an individual named Tommy Lewis. The deed further acknowledged a non-recorded agreement which granted a limited right of ingress and egress over a portion of the Eiland tract to the parcel belonging to Tommy Lewis. This easement was described as a "limited and exclusive right granted as access

---

[1] Joe Eiland died before the Archers' complaint was filed.

appertaining solely to said tract, which is limited to the said twenty eight feet in width, must be protected by a closed gate at all times, . . . for the sole access to that specific tract, and . . . run[ning] with the land." (Appellant's App. at 58.) The deed further contained a covenant of warranty and quiet enjoyment whereby the grantors promised to defend the Archers against any third party who lawfully claimed any part of the estate conveyed.

Sometime after the conveyance of the Eiland tract to the Archers, Brenda Brock succeeded to the title of Tommy Lewis. Brock planned to locate a mobile home on her property and approached the Archers claiming an express easement in excess of the right to ingress and egress referred to in the warranty deed. [2] There is no evidence that Brock claimed that her right to a more generous easement emanated from the Eilands. When the Archers approached Joe and Nadine Eiland regarding Brock's claim, the Eilands refused to defend the Archers' title.

Brock then sued the Archers over the matter of the easement. Before the state of her title could be legally determined, however, the Archers settled with Brock by purchasing her tract. The Archers then sued Nadine Eiland for breach of the warranty in the deed. In addition, they sued Nadine's son Daniel and

---

[2] The only evidence in the record of a demand in excess of the easement described in the warranty deed is Brock's apparent refusal to tolerate the gate on the easement. (Appellant's App. at 82.)

her grandsons, Ross and William, on a nuisance theory, alleging acts of theft, vandalism, and intimidation. The Archers claimed damages arising from the value of the stolen property, lost rental value, and their alleged forced evacuation from their home. When the Eilands failed to appear to defend the action, the Archers' filed a motion for default judgment. In response, the district court held an evidentiary hearing, denied default judgment against Nadine and Daniel, and granted default judgment against Ross and William in the amount of $1,375.00.

As none of the defendants appeared before the court, there is no question here that defendants were in default. As to the district court's response to the Archers' motion for default judgment, the district court properly took as true all factual allegations in the complaint, except those pertaining to the amount of damages. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 at 58-59 (3d ed. 1998). "Decisions to enter judgment by default are committed to the district court's sound discretion, and our review is for abuse of discretion. However, a decision based on an erroneous view of the law is an abuse of discretion." Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997) (citation omitted).

## II

The Archers argue that the district court erred in finding that Nadine Eiland was not liable for breach of warranty deed. In reaching this conclusion,[3] the court stated:

> Nothing in the record suggests that Ms. Brock asserted the Eilands had granted her a broader easement, which assertion would have been contrary to the warranty. Plaintiffs have not provided any authority for the proposition that a duty to defend in a warranty deed means that the grantor must defend any and all claims which a creative third-party plaintiff might fashion. The Eilands warranted that they could convey good title to the property and that they had granted no other easements. These warranties were not implicated by the Brock suit, so far as the record reflects. Plaintiffs' claim under Count I fails.

(Appellant's App. at 68.) We agree.

In order to establish their claim, the Archers were required to show that Brock's claim was superior to their title or possessory rights, see Lewis v. Jetz Serv. Co., 9 P.3d 1268, 1270 (Kan. Ct. App. 2000), and that Brock's paramount title was in existence at the time the warranty was made, see Wood v. Stewart,

---

[3] Contrary to statements in the Archers' brief, the district court did not conclude that the Archers had failed to state a claim; it concluded that the Archers could not prevail on the claim stated. (Appellant's App. at 68.)

150 P.2d 331, 333 (Kan. 1944). [4] This showing requires more than the presence of a third party asserting a hostile claim.

In Lewis, 9 P.3d at 1270, the plaintiffs settled with a third party who had claimed an allegedly superior lease which was later found by a court to be unenforceable. In a suit against the grantor, the court denied recovery on the plaintiff's claim for breach of warranty deed. "A grantor's covenant of title in a warranty deed is limited to lawful claims." Id. "An entry by an intruder, or by any one else, without lawful right and superior title is not a breach of the covenants, and in such case the remedy of the grantee is against the wrong-doers and not the covenantor." Id. (quotation omitted).

There is no evidence in the record that Brock's claim was paramount to that of the Archers—that she somehow was the true owner of the unrestricted easement she apparently demanded. By settling with Brock, the Archers precluded the possibility that her claim could be tested for its legality and, if found lawful, could be the basis for a breach of warranty claim against Nadine Eiland.

---

[4] Kansas law controls the outcome of this diversity case because the property at issue is located in Cherokee County, Kansas. See Anschutz Land & Livestock Co. v. Union Pac. R.R., 820 F.2d 338, 341 (10th Cir. 1987) (citing Williams v. North Carolina, 317 U.S. 287, 294 n.5 (1942)).

While we recognize the law's general preference for settlement, it is clear that in the case of suit on a title warranty, more than the fact of settlement with its attendant costs must be shown. In Roper v. Elkhorn at Sun Valley, 605 P.2d 968 (Idaho 1980), the court denied recovery on a warranty to plaintiffs who had settled a claim that later proved invalid. The court rejected the plaintiffs' argument that the defendants should be liable for their loss because the plaintiffs had acted reasonably and prudently in compromising a bona fide dispute. The court noted that

> [t]he mere showing of a cloud on the grantee's title is insufficient to establish a breach, for the warrantor is not bound to protect his grantor against a mere trespasser or against an unlawful claim of title. In other words, a covenant of warranty of title does not extend to apparent or unfounded titles in land, but only against hostile titles, superior in fact to those of the grantor.

Id. at 972 (quotation omitted). Similarly, in Green v. Ayres, 535 P.2d 762 (Oreg. 1975) (en banc), the plaintiffs had paid to remove portions of a building thought to encroach on adjoining property. The building was later deemed not to be an encumbrance because of a presumption of adverse possession. In an action to recover on a title warranty, the plaintiffs failed to recover because they failed to show the existence of another's right in detriment to their title. Id. at 764.

The instant case presents a similar situation. In the warranty, the Eilands promised to defend against any third party who lawfully claimed any part of the estate conveyed. The Archers have not shown that Brock's claim was lawful and

-7-

paramount to theirs, thus precluding their recovery. Because the unchallenged facts alleged in the complaint are insufficient to constitute a legitimate cause of action, the district court did not abuse its discretion in denying the motion for default judgment against Nadine Eiland.

## III

As their second issue on appeal, the Archers argue that they should have been awarded damages in an amount far greater than the $1,375.00 awarded by the district court. Specifically, they contend they should have been compensated for property stolen by defendants Ross and William Eiland valued at $1,515.00, and for damages arising from having to evacuate their property due to the nuisance created by defendants generally. [5] "It is well established that the amount of damages in a nonjury case is within the discretion of the trial court and cannot be overturned unless clearly erroneous." Taylor v. Pre-Fab Transit Co., 616 F.2d 374, 375 (8th Cir. 1980).

The Archers contend that the district court erred in failing to award them damages for the "forced evacuation" of their property. Those damages include loss of rental income from various tracts and residences on the property as well as the cost of purchasing and maintaining an alternative residence in Baxter Springs,

---

[5] For purposes of this section, the term "defendants" will not include Nadine Eiland.

Kansas, and for maintaining the residence on one of the vacated tracts. In denying damages for these items, the district court concluded there was insufficient causation between the actions of the defendants and the Archers' decision to vacate the property and, further, that the Archers "failed to show that vacating the property in question was a necessity." (Appellant's App. at 69.)

Alternatively, the court reasoned that, even if vacating the property was legally justified, "such a finding does not grant carte blanch[e] to recover for purchasing and maintaining a new home." Id. The court denied recovery on the lost rental because it found the damage claim to be "largely speculation, and excessive." Id. at 70. We agree with this determination, as well.

While it is probable that defendants' actions were sufficient to establish a private nuisance, we take the district court'sview that the damage claims for loss of rental value and for the costs of relocation cannot be sustained. "The successful plaintiff in a nuisance action may always recover such damages as he can prove, measured by loss of rental value for a temporary nuisance or by loss of market value for a permanent nuisance." Roger A. Cunningham, et al., The Law of Property §7.2 at 421 (2d ed. 1993) (citation omitted).

> Where the injury is temporary or remediable, the measure of damages
> is not the depreciation of the value of the property, but the
> depreciation of the rental or usable value during the continuance of
> the injury . . . ; and damages as for a permanent injury cannot be
> allowed where the injury is temporary or the nuisance removable.

Alexander v. Arkansas City, 396 P.2d 311, 315 (Kan. 1964) (quotation omitted).

The Archers do not argue that the nuisance here is anything but temporary. As such, they would be able to recover the loss of rental value of the property, had they provided more competent evidence of the measure of that damage. While they were not required to provide expert testimony as to these damages, see Hare v. Wendler, 949 P.2d 1141, 1143 (Kan. 1997), the Archers were required to demonstrate the best evidence under the circumstances in order to give the court a reasonable basis for the computation of the loss of rental value, Cott v. Peppermint Twist Mgmt. Co., 856 P.2d 906, 917 (Kan. 1993). Alleged damages are not recoverable if they are too conjectural or too speculative to form a basis for measurement. McKissick v. Frye, 876 P.2d 1371, 1389 (Kan. 1994).

Here, the Archers presented the court with a summary of damages, indicating a rental return of twelve percent for damages from lost rental on the subject property totaling $192,310.87. There is no evidence to substantiate the value of the Archer tract (although Mr. Archer testified to the purchase prices of the Eiland tract and the Newby tract) or the accuracy of the twelve percent figure as a legitimate rental rate. The district court concluded that the Archers' proof on this matter was "largely speculation, and excessive" and declined to arrive at its own damage amount absent appropriate evidence. (Appellant's App. at 70.) We find no error in this conclusion.

With regard to the claim for damages arising from the purchase of the new house in Baxter Springs and its maintenance, we conclude that the district court also properly denied recovery. Defendants, as tortfeasors, are generally liable for any injury and loss that is the natural and probable result of their wrongful acts. Ettus v. Orkin Exterminating Co., 665 P.2d 730, 737 (Kan. 1983). Nonetheless, plaintiffs are not entitled to damages that are too remote from a defendant's conduct. Arrow Constr. Co. v. Camp, 827 P.2d 378, 384 (Wyo. 1992). Implicitly concluding that this item of damage was too remote from defendants' tortious conduct, the district court noted that, even if "defendants' actions rose to the level that plaintiffs were legally justified in vacating the property, such a finding does not grant carte blanch[e] to recover for purchasing and maintaining a new home." (Appellant's App. at 69.)

We do not fault the district court's conclusion. Moreover, we find compelling support in the fact that this measure of damages is tantamount to the appropriate recovery in a case of a permanent nuisance, where the measure of damages is the depreciation of the value of the property as a whole. See Alexander, 396 P.2d at 315. Allowing the Archers to recover the cost of an entirely new residence is roughly the same as allowing them to recover the full market value of their property—a remedy reserved for cases of permanent nuisance. See, Cunningham, supra, § 7.2 at 421. The district court correctly

-11-

denied the Archers' claim for damages for the purchase and maintenance of their new home.

The next item of claimed damages is for the cost of maintaining a house on the property ("the Newby house") which costs, according to the Archers' summary of damages, include insurance, taxes, and interest. The record contains no evidence to substantiate the charges listed on the summary except for an insurance bill on the Newby house. Because this one aspect of the claim is not speculative or conjectural, the district court should have awarded an additional $1,146.00 to the Archers for the cost of insuring the Newby house, given the absence of proof as to any offset to that amount.

Finally, while the district court awarded $1,375.00 in damages for defendants' vandalism to a well pump and for the removal of survey stakes, the court did not address the Archers' claim for damages from the loss of property stolen by defendants Ross and William Eiland. Mr. Archer testified that he and his wife witnessed those two defendants removing a well pump, an antique Coca-Cola box, and an outboard motor from their barn. They estimated the combined value of these objects at $1,515.00, and a proof of loss form submitted by the Archers to their insurance company indicates loss of at least that amount. The district court should have awarded an additional $1,515.00 to the Archers from defendants Ross and William Eiland jointly and severally.

The judgment of the district court is AFFIRMED in part and REVERSED in part, and this case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court


Carlos F. Lucero
Circuit Judge